UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FIRST GLOBAL COMMUNICATIONS, INC.,

Plaintiff,

v.

JACKSON BOND, et al.,

Defendants.

NO. C05-749P

ORDER ON PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

This matter comes before the Court on Plaintiff's motion to dismiss Defendants' counterclaims for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 37). Having considered the materials submitted in support of and in opposition to this motion, the Court hereby GRANTS in part and DENIES in part Plaintiff's motion.

The Court GRANTS Plaintiff's motion to dismiss the following counterclaims alleged in Defendants' First Amended Answer and Counterclaims (Dkt. No. 39): (1) conversion; (2) fraud in the inducement; (3) fraud; (4) breach of indemnification agreement; (5) violations of RCW 19.86.030; (6) conspiracy to injure in trade, business or reputation; and (7) interference with prospective economic advantage. The Court DENIES Plaintiff's motion to dismiss the following counterclaims: (1) breach of contract; (2) breach of duty of good faith and fair dealing; and (3) trademark damages. The reasons for the Court's decision are set forth below.

**Background**

A. The Parties

Plaintiff First Global Communications is a New Jersey corporation. Plaintiff has registered the trademark for "World Sex Guide" and operates a website (worldsexguide.org) under that name. Plaintiff alleges that it is the successor-in-interest to a company called Aeroweb, Inc. Defendants allege that Aeroweb's primary owner was an individual named Ian Eisenberg, who was also a defendant in an unrelated action brought by the Federal Trade Commission (FTC) in this Court in FTC v. Cyberspace.com, LLC, C00-1806L (W.D. Wash.).

Defendants are Jackson Bond, an individual who lives in Argentina, and Powertools Software, Inc. ("Powertools"). Mr. Bond was president of Powertools. Defendants operate a number of websites that may be regarded as competitors of Plaintiff's site.

B. The Agreement

Much of this dispute arises from a "Web Site Development Agreement" (the "Agreement") that was signed in March 2001. The Agreement was between Aeroweb and Powertools. Ian Eisenberg signed the Agreement for Aeroweb, while Defendant Jackson Bond signed for Powertools.

In the "recitals" section, the Agreement states that the parties "would like POWERTOOLS to design, develop, maintain and operate an Internet web site . . . that features adult entertainment in connection with information about the worldwide sexual services industry." (Agreement at 1). Aeroweb was to provide the means to host this site. Id. Powertools was to receive 25 percent of the adjusted gross revenues from the site (which included revenue from membership fees, usage fees, advertising revenues, and revenues from the sale of merchandise), while Aeroweb was to retain the remaining 75 percent. Id. §§ 1.1, 4.1.

Under the Agreement, Powertools was to provide "content" to the site and to update the content at least once every thirty days. Id. § 2.2. The Agreement also provided that Powertools could

include a link on the site that would redirect users to "one . . . different site operated by POWERTOOLS." Id. § 3.1.

The Agreement could only be terminated for cause after giving the other party notice and an opportunity to cure. Id. § 9. Plaintiff alleges that it terminated the Agreement on June 7, 2004. Defendants contend that Plaintiff failed to terminate the Agreement in the manner required by the contract.

The Agreement included a choice of law and forum selection clause that provided that the Agreement would be governed by Washington state law and that any suits related to the Agreement would be brought in state or federal court in King County, Washington. Id. §11.3.

C. This Action

1. Plaintiff's Claims

Plaintiff filed this lawsuit in April 2005. Plaintiff's First Amended Complaint raises claims for breach of contract, trademark infringement, false designation of origin, Washington Consumer Protection Act (CPA) violations, and violations of the federal Computer Fraud and Abuse Act.

2. Defendants' Counterclaims

Defendants filed an answer and counterclaims to Plaintiff's First Amended Complaint on September 20, 2005. Defendants initially raised nine counterclaims: (1) breach of contract; (2) conversion; (3) fraud in the essence; (4) fraud; (5) breach of indemnification agreement; (6) Washington CPA violations under RCW 19.86.020; (7) conspiracy to injure in trade, business, or reputation; (8) interference with prospective economic advantage; and (9) breach of duty of good faith and fair dealing.

On October 13, 2005, Plaintiff filed this motion, seeking dismissal of all nine counterclaims raised by Defendants.

On October 27, 2005, Defendants filed an amended answer and counterclaims. The amended pleading included ten counterclaims: (1) breach of contract; (2) conversion; (3) fraud in the

inducement; (4) fraud; (5) breach of indemnification agreement; (6) conspiracy to injure in trade, business, or reputation; (7) violations of RCW 19.86.030; (8) interference with prospective economic advantage; (9) breach of duty of good faith and fair dealing; and (10) trademark damages.

Several days later, Defendants filed their response to Plaintiff's motion to dismiss. Defendants argued that the amendments to their counterclaims remedied any pleading deficiencies identified in Plaintiff's motion to dismiss. In its reply brief, Plaintiff argued that notwithstanding the amendments, Defendants' counterclaims are still subject to dismissal.

**Analysis**

Plaintiff has moved for dismissal of Defendants' counterclaims under Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is warranted if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). All allegations of material fact are construed in a light most favorable to the non moving party. Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1527 (9th Cir. 1995). However, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion for to dismiss for failure to state a claim." Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 923 (9th Cir. 2001). Dismissal is also proper "when there is a 'lack of a cognizable theory' to support a claim." City of Arcadia v. EPA, 411 F.3d 1103, 1106 n.3 (9th Cir. 2005). In ruling on a motion to dismiss, the Court may consider materials that are attached to a complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), as well as documents outside the complaint if the complaint specifically refers to the documents and the authenticity of the documents is not questioned. See Inlandboatmens Union of the Pacific v. Dutra Group, 279 F.3d 1075, 1083 (9th Cir. 2002).

Analysis of the pending motion is complicated by the fact that Defendants amended their counterclaims after Plaintiff filed the motion to dismiss. As a result, Plaintiff's opening brief is directed at the counterclaims initially alleged by Defendants, rather than the amended counterclaims

that were submitted after the motion to dismiss was filed. However, Defendants' amendments to their counterclaims largely do not state "new" counterclaims, but simply attempt to address the pleading deficiencies identified in Plaintiff's opening brief.

Plaintiff contends that Defendants were required to obtain leave of court to raise any new counterclaims that were not included in Defendants' initial answer and counterclaims. Plaintiff points to Fed. R. Civ. P. 13(f), which provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may be leave of court set up the counter-claim by amendment." However, Fed. R. Civ. P. 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Plaintiff did not file a responsive pleading to Defendants' original counterclaims. Instead, Plaintiff filed this motion to dismiss, which is not regarded as a responsive pleading under Rule 15(a). See Crum v. Circus Circus Enters., 231 F.3d 1129, 1130 n.3 (9th Cir. 2000). As a result, the Court finds that the requirements of Rule 15(a), rather than the requirements of Rule 13(f), governed Defendants' ability to amend their counterclaims. See, e.g., A.J. Indus., Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal., 503 F.2d 384, 388 (9th Cir. 1974) ("Where a responsive pleading had not yet been filed we see no reason why Rule 15(a) should not apply, with Rule 13(f) coming into force after the filing of the responsive pleading"). Under Rule 15(a), Defendants were entitled to amend their counterclaims and to add new counterclaims once as a matter of course because no responsive pleading had been filed to the original counterclaims.[1] See Delta Envtl. Prods., Inc. .v McGrew, 56 F. Supp. 2d 716, 717 n.1 (S.D. Miss. 1999); Van Dette v. Aluminum Air Seal Mfg. Co., 11 F.R.D. 558, 559-60 (N.D. Ohio 1951).

---

[1] Even if leave of Court were required under Rule 13(f), "courts have been quite liberal about granting leave to amend under Rule 13(f)." 6 Charles A. Wright et al., Federal Practice & Procedure § 1430 at 213 (2d ed. 1990).

1. Breach of Contract Counterclaim

Defendants' first counterclaim alleges that Plaintiff breached the Web Site Development Agreement. (Dkt. No. 39 at 9-11). Among other things, Defendants allege that Plaintiff failed to provide the required notice of termination in accordance with the contract terms. They also allege that Plaintiff failed to provide any accounting of revenue as required by the contract. In addition, Defendants claim that Plaintiff failed to make reasonable attempts to generate and collect membership and/or usage fees from the site.

Plaintiff argues that this counterclaim must be dismissed because Defendants did not notify Plaintiff of any of the alleged breaches. Plaintiff claims that such notice was required by the Agreement. However, sections 9.2 and 9.3 of the Agreement only require that notice and an opportunity to cure be provided if one party seeks to terminate the contract. These sections of the Agreement provide as follows:

> 9.2 Grounds for Termination. A party may terminate this Agreement upon written notice if the other:
> (a) commits a material breach of one or more of the terms of this Agreement; or
> (b) upon the reasonable determination of the non-breaching Party that the breaching Party has not or cannot fulfill its obligation under this Agreement; or
> (c) becomes insolvent, makes an assignment for the benefit of creditors, files a voluntary or involuntary petition under the bankruptcy or insolvency laws of any jurisdiction, appoints a trustee or receive for its property or business, or it adjudicated bankrupt or insolvent.
>
> 9.3 Cure Period. Upon written notice of termination under Section 9.2, the breaching party shall have fifteen (15) days to provide such evidence or take such corrective action as may be reasonably appropriate to the non-breaching Party for the breaching party to cure any inadequacies in performance described in the non-breaching Party's written notice of anticipatory breach. Failure of the breaching Party's ability to provide such evidence or take such corrective actions shall provide the non-breaching Party with the absolute right to immediately terminate this Agreement. Failure of the non-breaching party to provide the breaching Party with the cure opportunities described in this Section 9.3 shall constitute a material breach of this Agreement by the heretofore non-breaching Party.

There is no allegation that Defendants ever attempted to terminate the Agreement – instead, it was Plaintiff who allegedly terminated the Agreement in June 2004. As a result, Defendants were not

obliged under the Agreement to provide Plaintiff with notice of the breaches alleged in their counterclaim. Therefore, Plaintiff's motion to dismiss the breach of contract counterclaim will be denied.

2. Conversion Counterclaim

Defendants next raise a counterclaim for conversion. This claim is based on allegations that Plaintiff failed to pay Defendants their share of the adjusted gross revenues from the website as required by the Agreement. (Dkt. No. 39 at 11).

Plaintiff argues that under Washington law, a conversion claim cannot be brought for money allegedly owed under a contract. As Plaintiff notes, Washington courts have held:

> The tort of conversion is "the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it." Money may become the subject of conversion, but only if the party charged with conversion wrongfully received the money, or if that party had an obligation to return the money to the party claiming it.

Consulting Overseas Mgmt., Ltd. v. Shtikel, 105 Wn. App. 80, 83 (2001) (internal citation omitted). Similarly, the Ninth Circuit has noted that "[t]hough money or a check could in some circumstances be the subject of conversion, for example if someone wrongfully took a check from another's desk, the tort traditionally involves the wrongful taking and carrying away of something tangible." Reliance Ins. Co. v. U.S. Bank of Washington, N.A., 143 F.3d 502, 506 (9th Cir. 1998) (applying Washington law) (internal citation omitted).

Here, Defendants do not allege that Plaintiff wrongfully received any money. Defendants also do not allege that Plaintiff took money from them and then failed to return such funds. Instead, Defendants allege that Plaintiff has retained money that Defendants are owed under the Agreement. This allegation amounts to a breach of contract claim, not an action for conversion. As other courts have noted, "[i]n general, a conversion action cannot be maintained where damages are merely being sought for breach of a contract." Geler v. Nat'l Westminster Bank USA, 770 F. Supp. 210, 214

(S.D.N.Y. 1991) (applying New York law); see also Seekamp v. Small, 39 Wn. 2d 578, 582-84 (1951). As a result, the conversion counterclaim will be dismissed.

3. Fraud in the Inducement Counterclaim

Defendants also bring a counterclaim for "fraud in the inducement." Defendants allege that they would not have entered into the Agreement if they had known certain facts about Aeroweb and Mr. Eisenberg. Defendants allege that Aeroweb: (1) failed to disclose that Mr. Eisenberg had entered into a stipulated permanent injunction with the FTC in October 2000 that required him to refrain from certain practices, which allegedly prevented Aeroweb from carrying out the terms and conditions of the Agreement as warranted in § 6.1 of the contract; and (2) falsely represented that Aeroweb owned the rights to the "World Sex Guide" trademark. (Dkt. No. 39 at 12-14).

Washington courts have stated that "[f]raud in the inducement . . . is fraud which induces the transaction by misrepresentation of motivating factors such as value, usefulness, age or other characteristic of the property or item in question." Pedersen v. Bibioff, 64 Wn. App. 710, 722 (1992). A party claiming fraud generally must allege and prove: (1) a representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; and (9) his consequent damages. Id. at 723 n.10. Alternatively, a party may allege that the defendant breached a duty to disclose a material fact. Alejandre v. Bull, 123 Wn. App. 611, 619 (2004).

Plaintiff argues that the fraud in inducement counterclaim fails as a matter of law because Defendants fail to allege that any materials facts were either misrepresented or undisclosed. The Court agrees.

Defendants note that Ian Eisenberg entered into a stipulated permanent injunction with the FTC in October 2000 that provided that he and his corporations were "permanently restrained and

enjoined from sending a bill, or causing a bill to be sent, to any consumer for any product or service sold by defendant without first obtaining express, verifiable authorization that the consumer being charged has agreed to be charged for the product or service." (Dkt. No. 40 at 7). Defendants suggest that this provision of the FTC injunction prevented Mr. Eisenberg from performing the requirements of the Agreement between Aeroweb and Powertools. Id. at 7-8. However, there is no discernible reason why this provision of the FTC injunction – which prohibits Mr. Eisenberg from billing a consumer for services without the consumer's express authorization – prevented Mr. Eisenberg from fulfilling the obligations of the Agreement. The parties to the Web Site Development Agreement presumably did not contemplate that users of the site would be billed for products or services unless they had expressly authorized to be charged for the products or services. As a result, the restrictions in the FTC injunction do not support Defendants' allegations that Plaintiff failed to disclose a material fact that prevented Mr. Eisenberg or Aeroweb from fulfilling the terms and conditions of the Agreement.

Defendants also allege that Aeroweb falsely represented that it owned the "World Sex Guide" trademark. Plaintiff maintains that this allegation is insufficient to support a fraud in the inducement claim, arguing:

> Aeroweb's representations under the Agreement (¶ 6.1) did not contain any representations regarding the Mark. Moreover, First Global is the successor in interest to Aeroweb and is the rightful owner [of] the mark. The only party who could bring an action for infringement for use of the Mark was First Global. First Global does not allege any infringement for Defendants' use of the Mark consistent with the Agreement, nor could it, being the successor-in-interest to Aeroweb. Consequently, Defendant have suffered no damages as a result of Aeroweb's purported misrepresentations. Defendants' fraud in the inducement counterclaim based upon Aeroweb's alleged misrepresentations regarding ownership of the Mark fails as a matter of law and should be dismissed.

(Opening Brief at 10). Defendants offer no response to these arguments, and the Court finds Plaintiff's arguments persuasive.

Therefore, Defendants' counterclaim for fraud in the inducement will be dismissed.

4. Fraud Counterclaim

In addition to their "fraud in the inducement" counterclaim, Defendants also raise a separate counterclaim for fraud. (Dkt. No. 39 at 14-15). Along with very general allegations, Defendants allege:

> Between March 7, 2001 and March of 2002, the Defendants had at least three telephone conversations with representatives of the Plaintiff, including Ian Eisenberg. During each of these conversations, the Plaintiff's representatives expressed their intention to begin a policy of charging users for access to the Plaintiff's website.

Id.

Plaintiff argues that this counterclaim should be dismissed because Defendants have failed to plead fraud with the particularity required by Fed. R. Civ. P. 9(b). As Plaintiff notes, "Rule 9(b) requires plaintiffs to state the 'time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" Segal Co. (Eastern States), Inc. v. Amazon.com, 280 F. Supp. 2d 1229, 1231 (W.D. Wash. 2003) (quoting Teamsters Local #427 v. Philo-Ford Corp., 661 F.2d 776, 782 (9th Cir. 1981)). Here, Defendants do not provide the time or place of the alleged false representations, but simply allege that three conversations took place within the course of a year. Such a vague allegation does not satisfy the time and place particularly requirements of Rule 9(b). See Segal, 280 F. Supp. 2d at 1231.

Although not raised by Plaintiff, it should also be noted that Defendants cannot base a fraud claim under Washington law on a party's promise of future performance. As the court noted in Segal:

> In order to state a claim of fraud, plaintiffs must assert that an "existing fact" was misrepresented by defendant. However, "[a] promise of future performance is not a representation of an existing fact and will not support a fraud claim." In this case, plaintiffs' fraud claim rests on the fact that defendant misrepresented its intent to fulfill a future promise. As a matter of law, this allegation cannot provide a basis for a fraud claim. "[W]ere the rule otherwise, any breach of contract would amount to fraud . . . ."

Id. at 1232 (internal citations omitted). Here, Defendants' allegation of fraud is simply a claim that Plaintiff failed to fulfill a promise to charge users for access to Plaintiff's website. As in Segal, such allegations cannot support a claim for fraud.

Therefore, Defendants' counterclaim for fraud will be dismissed.

5. Breach of Indemnification Agreement Counterclaim

Defendants next bring a counterclaim for "breach of indemnification agreement." (Dkt. No. 39 at 15). Defendants base this claim on the indemnification clause of the Agreement, which provides in part that:

> AEROWEB agrees to defend, indemnify and hold harmless POWERTOOLS . . . from and against any and all loss, liability, claims, damage, cost or expense, causes of action, suits, proceedings, judgments, awards, executions and liens . . . proximately caused by an actual breach of any warranties or representations made by AEROWEB under the terms of this Agreement.

(Agreement at § 7.2). Defendants allege that Plaintiff breached the indemnification clause by filing this lawsuit.

Plaintiff argues that this counterclaim defies common sense, noting that the indemnification clause simply requires Plaintiff to indemnify Defendants from lawsuits that are "proximately caused by an actual breach of any warranties or representations" by Plaintiff. The Court agrees. Plaintiff's lawsuit is based on allegations of wrongdoing by Defendants, not by Plaintiff. As a result, Plaintiff's lawsuit does not constitute a breach of the indemnification agreement. Therefore, this counterclaim will be dismissed. See, e.g., Mead v. Park Place Properties, 37 Wn. App. 403, 408-09 (1984) (dismissing breach of indemnification counterclaim that was based on plaintiff's lawsuit against defendant).

6. Conspiracy to Injure in Trade, Business, or Reputation Counterclaim

Defendants next raise a counterclaim for "conspiracy to injure in trade, business, or reputation." Defendants allege that Plaintiff has conspired with two of its predecessors-in-interest (Aeroweb and a company called "Marvad Corporation") to injure Defendants "by requesting the entry of an Injunction prohibiting competition for two years, and to obtain the database of registrants and customer names and addresses from the Defendants in order to misappropriate the entire internet website owned by Defendants for Plaintiff's sole and exclusive use." (Dkt. No. 39 at 16). In essence,

this counterclaim is based on the fact that Plaintiff has sought an injunction and other forms of relief in this litigation.

Defendants cite no authority from Washington or any other jurisdiction in which a court has held that a claim for conspiracy to injure in trade, business, or reputation may be based on the fact that the opposing party sought an injunction or other forms of relief in a lawsuit. As a result, the conspiracy counterclaim will be dismissed.

7. Counterclaim for Violations of RCW 19.86.030

In its initial counterclaims, Defendants raised a claim under RCW 19.86.020, a provision of the Washington Consumer Protection Act (CPA) that prohibits unfair or deceptive acts or practices in trade or commerce. In its amended counterclaims, Defendant no longer assert a claim under RCW 19.86.020. Instead, they raise a counterclaim under RCW 19.86.030, a provision of the CPA that prohibits restraints of trade.

Like the conspiracy claim discussed above, Defendants essentially base this claim on the fact that Plaintiff has sought an injunction and other forms of relief in this litigation. (Dkt. No. 39 at 16-17). Again, however, Defendants cite no case law suggesting that a claim under RCW 19.86.030 may be based on the opposing party's request for an injunction and other forms of relief in a lawsuit. Furthermore, Defendants make no allegation that Plaintiff's lawsuit constitutes "sham litigation." Therefore, this counterclaim will be dismissed.

8. Interference with Prospective Economic Advantage Counterclaim

Defendants also bring a counterclaim for "interference with prospective economic advantage," which both parties characterize as a tortious interference claim. (Dkt. No. 39 at 17). Once again, this claim is essentially based on the fact that Plaintiff has sought an injunction and other forms of relief in this case. Defendants allege that by seeking such relief, Plaintiff has attempted to interfere with the contractual relationships between Defendants and its customers.

As before, Defendants fail to point to any case law holding that a tortious interference claim may be based on a request for an injunction or other forms of relief in a lawsuit. In addition, it should be noted that Defendants only allege that Plaintiff "attempted" to interfere with Defendants' contractual relationships with the users of Defendants' websites; there is no allegation that Plaintiff actually caused any breach or termination of Defendants' contractual relations with a third-party, a necessary element of a tortious interference claim. See, e.g., Koch v. Mutual of Enumclaw Ins. Co., 108 Wn. App. 500, 506 (2001) (elements of tortious interference claim include "an intentional interference inducing or causing a breach or termination" of a valid contractual relationship or business expectancy). Therefore, this counterclaim will be dismissed.

9. Breach of Duty of Good Faith and Fair Dealing Counterclaim

Defendants next allege that Plaintiff breached its duty of good faith and fair dealing under the Agreement. Among other things, Defendants allege that Plaintiff failed to permit Powertools to perform its obligations under the Agreement and failed to maintain a link to Powertools' website as required by the contract.

Plaintiff argues that this counterclaim should be dismissed because it is duplicative of the breach of contract claim. However, the only authority that Plaintiff cites for this argument is a bankruptcy court decision from Delaware. See In re Buckhead America Corp. v. Reliance Capital Group, Inc., 178 B.R. 956 (D. Del. 1994). The Court does not find this authority persuasive. Washington courts have held that "[i]n every contract there is an implied covenant of good faith and fair dealing which obligates the parties to cooperate with one another so that each may obtain the full benefit of performance." Cavell v. Hughes, 29 Wn. App. 536, 539 (1981). Defendants' allegations are sufficient to state a claim for breach of this implied duty.

10. Trademark Damages Claim

Finally, Defendants assert a counterclaim for trademark damages under 15 U.S.C. § 1120. Because this counterclaim was not raised until Defendants filed their amended answer and counterclaims, Plaintiff's opening brief did not address this claim.

Plaintiff argues in its reply brief that this newly-added counterclaim should be dismissed. However, Defendants have not had an opportunity to respond to those arguments, which were presented for the first time in the reply brief. Therefore, this counterclaim will not be dismissed at this time.

**Conclusion**

The Court finds that seven of Defendants' ten counterclaims should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Therefore, Plaintiff's motion is GRANTED in part. The Court hereby dismisses Defendants' counterclaims for: (1) conversion; (2) fraud in the inducement; (3) fraud; (4) breach of indemnification agreement; (5) violations of RCW 19.86.030; (6) conspiracy to injure in trade, business, or reputation; and (7) interference with prospective economic advantage.

The Court finds that Defendants have adequately alleged counterclaims for breach of contract and breach of duty of good faith and fair dealing. Therefore, Plaintiff's motion to dismiss will be DENIED with respect to those two counterclaims. The Court further DENIES Plaintiff's request to dismiss Defendants' counterclaim for trademark damages because this counterclaim was first addressed by Plaintiff in its reply brief.

The clerk is directed to send copies of this order to all counsel of record.

Dated: January 27, 2006.

s/Marsha J. Pechman
Marsha J. Pechman
United States District Judge