UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FIRST GLOBAL COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JACKSON BOND, et al., <br><br> Defendants. | NO. C05-749P <br><br> ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

This matter comes before the Court on Plaintiff First Global Communications' motion for a preliminary injunction. (Dkt. No. 27). The Court has reviewed the papers and pleadings submitted by the parties, as well as Plaintiff's website (www.worldsexguide.org) and the parties' responses to the Court's order to show cause why Plaintiff's motion should not be denied under the clean hands doctrine. Having considered these materials and having heard oral argument from the parties, the Court hereby DENIES Plaintiff's motion. The Court finds that under the clean hands doctrine, the preliminary injunction requested by Plaintiff should not issue.

ORDER - 1

**Findings of Fact**

A. <u>The Parties and Their Agreement</u>

Plaintiff First Global Communications has registered a trademark for the term "World Sex Guide" and operates a website (worldsexguide.org) under that name. Plaintiff alleges that it is the successor-in-interest to a company called Aeroweb, Inc.

Defendants are Jackson Bond, a person who lives in Argentina, and Powertools Software, Inc. ("Powertools"). Mr. Bond has served as president of Powertools. Mr. Bond and/or Powertools have operated several websites, including "wsgforum.com," "worldsexguide.info," "usasexguide.info," "internationalsexguide.info," and "argentinaprivate.com."

In March 2001, Powertools and Aeroweb entered into a "Web Site Development Agreement." In the "recitals" section, the Agreement states that the parties "would like POWERTOOLS to design, develop, maintain and operate an Internet web site . . . that features adult entertainment in connection with information about the worldwide sexual services industry." (Agreement at 1). Aeroweb was to host this site. Id.

B. <u>The "World Sex Guide" Website and Trademark</u>

1. <u>The Site</u>

Plaintiff's "World Sex Guide" site provides information about prostitution services in the United States and abroad.[1] It appears that most of the "content" on the site is provided by users of the site, although Defendants have introduced evidence that Plaintiff plays a role in editing the user-supplied content and selecting which content to publish on the site.

User-supplied content on the site includes "reviews" of prostitution services in the United States and abroad. As of October 26, 2005, the site stated that there were 10,181 reviews in its database, including reviews for all 50 states. (Dkt. No. 43 at 2-3). The content on the site also

---

[1] Similarly, Defendants indicate that they have maintained sites regarding the "sexual services industries." (Dkt. No. 33 at 7).

ORDER - 2

includes information about "sting operations" by law enforcement officials to curb prostitution in specific areas, including information about the locations and methods of such operations. The Court has reviewed the "World Sex Guide" postings for the state of Washington. See Dkt. No. 43. Many of these postings describe where to find prostitution services in Washington state, including details such as cost, locations, names of particular women, and the extent of the "services" offered.

Plaintiff's president Ralph Holmin has characterized user-supplied reviews as one of First Global's most valuable assets. (Dkt. No. 28 at ¶¶ 5-7). Plaintiff argues that this content is a "valuable and perishable asset" and asks the Court to require Defendants to turn over user-supplied content that was allegedly diverted from Plaintiff's site. (Dkt. No. 27 at 17).

The World Sex Guide site also has discussion boards for users of the site. The site includes postings by a person whose screen name is "TheBanker" and who is described as the webmaster. Plaintiff's counsel acknowledged at oral argument that "TheBanker" is Ralph Holmin, the president of First Global. In its briefing, Plaintiff claimed that "First Global provides no content to the Site (other than posting administrative messages)." (Dkt. No. 44 at 4). However, Defendants have introduced evidence that Mr. Holmin (i.e., "TheBanker") creates some non-administrative content on the site, such as a posting on April 30, 2005 where he asked "What is the going rate now for NYC street action," as well as other postings where he provides information about prostitution services in Colombia, Montreal, and other locations. (Dkt. No. 47, Ex. A).

The site also includes advertising for "escort services," as well as advertising for other websites. Plaintiff's counsel acknowledged at oral argument that "escort services" is essentially a euphemism for prostitution services. Defendants introduced evidence that Plaintiff has sought to charge fees for "escort" ads. See Dkt. No. 47, Ex. A (November 20, 2003 message from "TheBanker" stating "[t]he free ad is available for six months, with the option of extending that ad to 1 year for only $69 or extending it to two years for only $169").

The World Sex Guide site describes itself as follows:

ORDER - 3

> The World Sex Guide is a world wide community of men (and some women) who enjoy sexual relationships with other consenting adults. Our members travel far and wide in search of exotic adventures. So what does that mean? *We like to find women and get laid.*
>
> In the near future we plan to expand our mission by becoming a resource guide for sex workers so that they can find organizations which provide support and services to sex workers. We, at the WorldSexGuide, believe that sex workers should be treated fairly and without discrimination.
>
> In addition, we plan to provide financial support to organizations who work to promote the rights of sex workers and who fight against the violence and exploitation which sex workers, of all genders, presently endure.
>
> Please check back as we expand and clarify our Mission Statement.

See www.worldsexguide.org/WSGSiteHistory.html (last visited on January 9, 2006) (emphasis in original).

Plaintiff maintains that the site is an "online guide in the field of travel and entertainment." (Dkt. No. 28 at ¶ 2). This Court finds this description to be misleading and inaccurate, given the actual content on the site. Illegal prostitution services cannot be regarded as legitimate "entertainment." In addition, the "travel reports" for Washington state that are posted on the site do not provide the type of information associated with a travel guide. For example, the site provides the following "Seattle Travel Report" dated October 5, 2003:

> Folks I was in Seattle for a few days before I made a trip to Korea. I will tell you if you're looking for some good action go to [a particular hotel] next to the airport. Go there after 10:00 any night of the week. Sit at the bar and wait.
>
> Me and a couple friends were drinking at the bar and these 2 girls came and sat next to us. After a few drinks later they told us they were "self employed." They started out wanting $150 for full sex. We talked them down to $80. Up to our hotel rooms we went. Blow job no condom. Then sex with condom. Good times! I'll be back there the next time I'm in Seattle.

(Dkt. No. 43 at 11).

2.  Plaintiff's Trademark

Plaintiff filed an application to register "World Sex Guide" as a trademark in December 1997. The Patent and Trademark Office (PTO) registered the trademark on August 1, 2000. The

ORDER - 4

1  specification for the trademark is for use in "computer services, namely, providing on-line guides in the
2  field of travel and entertainment." Defendant has introduced evidence that at the time that Plaintiff
3  filed its application to register the "World Sex Guide" trademark in 1997, a third-party named "Atta"
4  was already operating a website under that name.

5        On August 9, 2005, Plaintiff filed an "incontestability declaration" with the PTO. In filing its
6  incontestability declaration, Plaintiff declared that the trademark "has been in continuous use in
7  commerce for five consecutive years after the date or registration . . . and is still in use in commerce
8  on or in connection with all goods and /or services" identified in its existing registration.

9  C.    <u>This Action</u>

10      1.    <u>Plaintiff's Claims</u>

11        Plaintiff's first amended complaint raises six claims, including claims for breach of contract,
12  trademark infringement, and cyberpiracy. Among other things, Plaintiff alleges that: (1) Defendants
13  set up another website called "Wsgforum.com" and diverted users from Plaintiff's site to the other
14  site; (2) Defendants placed "hyperlinks" on Plaintiff's site in such a manner that users who sought to
15  submit content to the "World Sex Guide" would instead submit such content to the Wsgforum.com
16  site; (3) Defendants registered and set up a web site called "worldsexguide.info" and diverted content
17  to that site that should have appeared on Plaintiff's site; (4) after this lawsuit was filed, Defendants set
18  up new websites (usasexguide.info and internationalsexguide.info) and misled consumers into believing
19  that these sites were affiliated with the "World Sex Guide" site; (5) Defendants included "metatags"[2]
20  on their sites that included the term "World Sex Guide," which caused Internet search results for the

---

23     [2] Metatags "are hidden HTML code intended to describe the contents of the web page. On
24  many search engines, the more often a term appears in the metatags of a particular web page, the more likely it is that the web page will be 'hit' in a search for that keyword and the higher on the list of 'hits' the web page will appear." <u>Interactive Prods. Corp. v. A2Z Mobile Office Solutions, Inc.</u>, 326 F.3d
25  687, 692 (6th Cir. 2003).

26  ORDER - 5

term "world sex guide" to list Defendants' sites; (6) Defendants used the term "World Sex Guide" on the opening page of their "wsgforum.com" site.

    2.    <u>Plaintiff's motion for a preliminary injunction</u>

In the pending motion, Plaintiff has requested the following preliminary injunctive relief:

(1) Require Defendants to turn over all content that Defendants allegedly diverted from Plaintiff's site and to immediately cease using or exploiting that content.

(2) Enjoin Defendants from using Plaintiff's registered mark or any variations of the mark in connection with any web sites or marketing efforts.

(3) Require Defendants to turn over several internet domains to Plaintiff, including wsgforum.com, worldsexguide.info, usasexguide.info, internationalsexguide.info, internationalsexguide.com, and argentinaprivate.com.

(4) Enjoin Defendants from contacting any users of Plaintiff's website or Defendants' websites for the purpose of diverting them to other web sites or making any statements to those users regarding the affiliation between Plaintiff's web site and Defendants' web sites.

(Dkt. No. 27 at 19).

**Application of the Clean Hands Doctrine**

Plaintiff is using the "World Sex Guide" mark in connection with a website that provides "user reviews" and other information about prostitution services. Plaintiff's site provides information about such services for many locations where prostitution is illegal, including but not limited to Washington state.

In light of the nature of Plaintiff's website and its use of the mark, the Court issued an order for Plaintiff to show cause why a preliminary injunction should not be denied under the clean hands doctrine. In its order to show cause, the Court noted:

> A preliminary injunction is an equitable remedy. In order to obtain equitable relief, it is axiomatic that the moving party must come to court with clean hands. As one court has noted, "[a]n obviously sensible application" of the clean hands doctrine "is to withhold an equitable remedy that would encourage, or reward (and thereby encourage) illegal activity, as where the injunction would aid in consummating a crime." <u>Shondel v. McDermott</u>, 775 F.2d 859, 868 (7th Cir. 1985). As noted by the court in <u>United States Jaycees v. Cedar Rapids Jaycees</u>, 794 F.2d 379, 382 (8th Cir. 1986), a court sitting in equity is "still, even in this modern day of merged practice, a court of conscience, and it ought not grant equitable relief for an

ORDER - 6

unconscionable purpose, however strong the legal rights asserted may be." See also <u>Big Time Worldwide Concert & Sport Club at Town Center, LLC v. Marriott Int'l, Inc.</u>, 236 F. Supp. 2d 791, 808-810 (E.D. Mich. 2003) (refusing application for preliminary injunction in trademark case where the moving party appeared to engage in ticket "scalping" in violation of Michigan law).

(Dkt. 42 at 3).

The Court noted that while prostitution is legal in some countries and parts of the state of Nevada, Washington state law prohibits "advancing" prostitution, including conduct that is "designed to institute, aid, or facilitate an act or enterprise of prostitution." RCW 9A.88.060.  The Court indicated that "[m]any materials on Plaintiff's website could be construed as 'advancing prostitution' under this definition," since "the 'reviews' on Plaintiff's website essentially provide information to assist third parties in procuring prostitution services."  (Dkt. 42 at 2).

In response to the Court's order to show cause, Plaintiff suggests that the content on its site does not illegally advance prostitution under Washington law.  Plaintiff cites <u>State v. Basden</u>, 31 Wn.2d 63 (1948), for the proposition that RCW 9A.88.060 is "directed against procurers and panders, and those who profit from the prostitution of women."  Plaintiff's citation of <u>State v. Basden</u> is not persuasive, since the case did not interpret the provisions of RCW 9A.88.060 that prohibit advancing prostitution.  Instead, the case interpreted a Washington statute "relating to placing females in houses of prostitution." <u>Id.</u> at 65-66.

Plaintiff also argues that the content provided by the users of its website is protected by the First Amendment.  Plaintiff notes that the Supreme Court has held that "the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy . . . of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." <u>Bradenberg v. Ohio</u>, 395 U.S. 444, 447 (1969).  However, that "speech that aids or abets criminal activity can be prohibited." <u>United States v. Schiff</u>, 379 F.3d 621, 626 (9th Cir. 2004).  As such, states may prohibit speech that aids or abets illegal prostitution. In addition, "[t]he government may ban . . . commercial speech

ORDER - 7

related to illegal activity" Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York, 447 U.S. 557, 563-64 (1980); see also The Casbah, Inc. v. Thone, 651 F.2d 551, 564 (8th Cir. 1981) (upholding restraint of advertising promoting sale of drug paraphernalia, noting that such speech "is analogous to advertisements promoting the sale of narcotics or soliciting prostitution, and may constitutionally be prohibited."). Here, at least some of the materials on Plaintiff's site (e.g., advertisements for "escort services") appear to constitute commercial speech regarding illegal activities. Furthermore, Plaintiff maintains that the user-supplied content on the site has commercial value and is seeking an order from the Court to require Defendant to turn over such content.

In short, the Court is skeptical of Plaintiff's arguments that none of the content on its site is contrary to Washington law. However, the issue presented by this motion is not whether the Court should prohibit Plaintiff or the users of Plaintiff's site from publishing information about prostitution services. Instead, the question is whether the Court should invoke its equitable powers to issue a preliminary injunction that would, among other things, require Defendant to turn over content such as "user reviews" of prostitution services to Plaintiff.

As the Seventh Circuit has noted, "[a]n obviously sensible application" of the clean hands doctrine "is to withhold an equitable remedy that would encourage, or reward (and thereby encourage), illegal activity, as where the injunction would aid in consummating a crime." Shondel v. McDermott, 775 F.2d 859, 868 (7th Cir. 1985). In a similar vein, the Eighth Circuit has observed that a court sitting in equity is "a court of conscience, and it ought not grant equitable relief for an unconscionable purpose, however strong the legal rights asserted may be." United States Jaycees v. Cedar Rapids Jaycees, 794 F.2d 379, 382 (8th Cir. 1986).

Here, the Court concludes that the issuance of a preliminary injunction would have the effect of encouraging illegal activity and would serve an unconscionable purpose. The Court will not use its equitable powers to facilitate or encourage the dissemination of materials that aid individuals in procuring illegal prostitution services in Washington or elsewhere, nor will the Court invoke its

ORDER - 8

equitable authority to order the transfer of "user reviews" of prostitution services from Defendants to Plaintiff.

The Court also declines to use its equitable powers to ratify Plaintiff's use of its "World Sex Guide" trademark in connection with a website that provides information about prostitution services in places where prostitution is illegal. Plaintiff argues that the clean hands doctrine should not be applied in this matter because any "questionable content" on its site does not relate to Plaintiff's trademark. The Court disagrees. Plaintiff's trademark is registered for use in "providing on-line guides in the field of travel and entertainment." Given the actual content on this site, the World Sex Guide site cannot be regarded as a "travel and entertainment" guide by any reasonable definition. Therefore, the "questionable content" on the site directly relates to whether Plaintiff is actually using its trademark to provide the services specified in its trademark registration. Because Plaintiff uses "World Sex Guide" mark to maintain a website about prostitution services, rather than legitimate guides in the field of travel and entertainment, Plaintiff does not come to a court of equity with clean hands.

Finally, Plaintiff's counsel suggested at oral argument that the public interest would be served by granting a preliminary injunction because it would reduce consumer confusion between Plaintiff's site and Defendants' sites. The Court fails to see how the public has an interest in reducing consumer confusion between websites that provide information about prostitution services, given that prostitution is illegal in virtually all of the United States.

**Conclusion**

Plaintiff's "World Sex Guide" trademark is registered for use in providing travel and entertainment guides. However, Plaintiff's "World Sex Guide" website provides "user reviews" and other information about prostitution services, including information about such services for locations where prostitution is illegal. Under these circumstances, Plaintiff does not come before the Court with clean hands and the Court declines to exercise its equitable authority to provide the relief requested by

ORDER - 9

Plaintiff. Therefore, Plaintiff's motion for a preliminary injunction is DENIED under the clean hands doctrine.

The clerk is directed to send copies of this order to all counsel of record.

Dated: February 3, 2006.

                                          s/Marsha J. Pechman
                                          Marsha J. Pechman
                                          United States District Judge

ORDER - 10